UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Ocean Garden Products, Inc., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | Civil Action H-08-3210 |
| | § | |
| Northfield Insurance Company, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Findings of Fact and Conclusions of Law

1.    *The Shrimp Vanish.*

Ocean Garden Products owned 600 cartons of block-frozen shrimp. Loga Transport, Inc., loaded them at Sierra Refrigerating Company in Nogales, Arizona, on September 20, 2007, for carriage to Ocean's facility in Newark, New Jersey. Loga did not except on the bill of lading when it accepted the shrimp. It drove the shrimp to a tractor-trailer yard in El Paso, Texas, and parked there on Friday, September 21st. When a different driver arrived on Monday, September 24th, Loga discovered that the tractor-trailer was missing. The next day, the El Paso Police located it, but the shrimp were gone and have never been found.

Northfield Insurance Company insured Loga for cargo loss at the time of the shrimp's disappearance. The policy limit is $100,000 with a $2,000 deductible. At the time of the loss, the fair market value of the cargo was at least $120,000.

Under the Carmack Amendment as well as common-law bailment, Loga is liable for the loss of the cargo. *49 U.S.C.S. § 14706 (2004)*. The bill of lading shows that the shrimp were delivered to Loga in good condition and were never redelivered to Ocean.

2.    *Chronology.*

On September 25th, Loga reported the loss to Northfield. Two days later, Northfield's representative, Richard Mank, arrived in El Paso to investigate. Mank interviewed Eddie Provencia, a representative of Loga, about the claim on September 27th. Loga told Northfield that Ocean demanded payment on October 16th, and October 23rd. On November 13th, Northfield's claims handler, Richard J. Wisniewski, spoke to Susanne Osborne of Ocean about the claim.

Ocean's cargo insurer paid it $101,000 for the shrimp on November 12th, and Ocean paid a $25,000 deductible. ACE USA, representing Ocean's subrogated claim, then contacted Northfield about reimbursement on February 14, 2008, March 11th, and July 16th, but Northfield closed its file on April 7, 2008, without denying coverage.

Ocean sued Loga and the broker, Distributors Transport, Inc., on October 28, 2008. Loga never appeared and never notified Northfield of the lawsuit, but Ocean Garden notified Northfield. Ocean first notified Northfield of the lawsuit on December 18th, when it sent Northfield a copy of the complaint and proof of service on Loga. Two months later, on February 12, 2009, Ocean again sent Northfield copies of the complaint and proof of service, with a warning it that it would soon be moving for a default judgment against Loga. The court issued a default judgment against Loga for $126,000.00 on February 23rd. Ocean sent Northfield a copy of the default judgment that day. On June 22nd, Ocean added Northfield as a defendant.

3.   *Conditions Precedent to Coverage.*

Northfield says Loga voided coverage by not notifying it of the lawsuit and by refusing to cooperate in the investigation. In Texas, for an insurer to avoid liability, it must show that it has been prejudiced by the insured's breach of the policy. *Paj, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630 (Tex. 2008).

A.   *Notice.*

Northfield was given actual notice multiple times of the loss and of the lawsuit. The loss was reported the day after it occurred and Northfield promptly investigated. It was told six times by Loga and by Ocean that Ocean demanded payment. Two months after the lawsuit was filed, Ocean told Northfield and kept it abreast of the case's progress.

The facts are simple and strong that Northfield was not prejudiced as a matter of law by Loga's failure to report directly Ocean's lawsuit. Northfield was immediately aware of the loss and promptly investigated, but it has been unable to show facts it has or could have discovered that would have excused it from paying. It knew from the beginning that Ocean demanded payment, and when told of the impeding default, it chose not to appear or even negotiate with Ocean. Neither Loga's liability nor the default judgment surprised Northfield; it was not prejudiced by Loga's failure to notify it of the lawsuit.

B.     *Cooperation.*

Loga has not voided coverage by refusing to submit to an examination under oath or furnish documents.  Loga did not simply sit mute; it collapsed, and the principals disappeared.  Northfield did not demonstrate what it would or could have learned from the examination and documents that would release it from its responsibility to pay the claim.  It presented no plausible plan that would have led to evidence that it and the police were unable to locate in the days immediately following the cargo's disappearance.  In fact, Northfield did not consider examining Loga until two months after the loss.  It suggests that the parties would have settled if Loga had been examined, but Loga's liability was always clear.  More important, it did not initiate proceedings to subpoena the examinations and information it desired.  Because Northfield has not shown how it was harmed by Loga's reticence, Loga's lack of cooperation does not preclude Northfield's responsibility.

Cooperation clauses are intended to develop defenses for the insured's substantive liability, not to determine whether the occurrence is covered by the policy. *See Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 397 (5th Cir. 1995), reversed on other grounds.  Here, Loga's liability was certain; Northfield sought the examinations to explore whether Loga's actions voided coverage.  Notwithstanding the intended purposes of cooperation clauses, for Loga's silence to void coverage, Northfield must show that it was prejudiced by the breach; it has not.

4.     *No Exclusions.*

Because the policy insures Loga's liability for losing property for which it is legally responsible under bills of lading or shipping receipts, the shrimp are a covered loss.

As the insurer, Northfield had the burden to prove that an exclusion exists that avoids coverage.  Tex. Ins. Code §554.002 (Vernon 2009).  Northfield has not demonstrated an exclusion that applies.

5.     *Distributors Transport, Inc.*

Ocean originally contracted with Distributors to ship the cargo from Arizona to New Jersey.  Distributors operates as both a carrier and a broker under the Federal Motor Carrier Safety Act.  As a broker, it arranged for Loga to ship the shrimp.  Distributors did not accept

the cargo or contract as a carrier.  Rather, Loga, by signing the bill of lading, undertook carrier liability.  Northfield may not blame Distributors for Loga's loss.

6.      *Attorney's Fees.*

Loga dissolved shortly after the shrimp disappeared; its principals cannot be located. If Loga had not dissolved, it would have sued Northfield for breaching the contract by failing to defend it and for failing to pay the claim.  Because Loga no longer exists, Ocean was forced to sue Northfield to enforce the policy.  As a successor to Loga, Ocean is equitably entitled to the rights and remedies Loga would have had.   When a policyholder successfully sues its insurer for breach of contract, it is entitled to attorney's fees and costs for that action. *Tex. Civ. Prac. & Rem. Code* ch. 38 (Vernon 2008); *Federated Mutual Ins. Co. v. Grapevine Excavation, Inc.*, 241 F.3d 396, (5th Cir. 2001); *Grapevine Excavation Inc. v. Maryland Lloyds*, 35 S.W.3d 1 (Tex. 2000).

Ocean is also entitled as a judgment creditor to its reasonable attorney's fees and costs for enforcing the judgment against the insurer when the insurer breached its agreement. *Hartford Casualty Co. v. Cruse*, 938 F.2d 601 (5th Cir. 1991); *Mid-Continent Casualty Co. v. JHP Development, Inc.*, 2005 U.S. Dist. LEXIS 16212, 16228 (W.D. Tex. 2005), *aff'd*, 557 F.3d 207 (5th Cir. 2009); *Texas United Ins. Co. v. Burt Ford Enterprises, Inc.*, 703 S.W.2d 828, 835 (Tex. App.–Tyler 1986).

7.      *Conclusion.*

From Northfield, Ocean will take $98,000.00, the policy limit less the amount of the deductible, and its reasonable attorneys fees for pursuing the default judgment and for enforcing that judgment.

Signed on April __21__, 2010, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge